MARTIN TUTTLE, Appellee, v. POLK & HUBBELL *et al.*, Appellants.

1. **Municipal Corporations**: SPECIAL ASSESSMENT BASED ON VOID PAVING CONTRACT: LEGALIZING ACT: REASSESSMENT. Under chapter 44 of the Acts of the Twenty-second General Assembly providing that, whenever, by reason of an alleged non-conformity to any law or ordinance, or by reason of any omission or irregularity, any special tax or assessment, is either invalid, or its validity is questioned, a city council may make all necessary orders and ordinances, and may take all necessary steps to correct the same, and to reassess and relevy such tax or assessment, including the ordering of the work, an assessment for paving against the abutting property, based upon a contract which was void because the city council did not determine the kind of material to be used in the work in advance of advertising for the bids of contractors, may be legalized by a subsequent ordinance of the city council ratifying and confirming all of the proceedings previously had in the matter of said paving, and a reassessment made therefor will be enforceable against the abutting property as though originally valid. [GRANGER, J., *dissenting.*]

2. ———: ———: ———: INTEREST: EXPENSE OF COLLECTION. In an action for the collection of the amount of such reassessment by the holder of the paving certificate against the abutting property-owner, the plaintiff is entitled, under section 479 of the Code, to interest upon the amount at the rate of ten per cent. from the date of the reassessment, and an additional five per cent. for the expense of collection.

3. ———: ———: ———: ———. The first assessment being void, the plaintiff is not entitled to recover interest thereon until after the date of the reassessment, nor is he entitled to costs of suit brought upon such void assessment.

*Appeal from Polk District Court.* — HON. MARCUS KAVANAGH, JR., Judge.

TUESDAY, OCTOBER 27, 1891.

ACTION upon a written instrument known as a "paving certificate," issued by authority of the council

of the city of Des Moines on account of paving a street in front of certain lots owned by the defendants. There was a hearing by the court, and a judgment for the plaintiff, and a decree making said judgment a lien upon the said lots.   The defendants appeal.—*Affirmed.*

*Kauffman & Guernsey*, for appellants.

*Gatch, Connor & Weaver*, for appellee.

ROTHROCK, J.—I. The paving, the payment for which is in controversy in this action, is the same as that which was involved in the case of *Coggeshall v. City of Des Moines*, 78 Iowa, 235.   It is unnecessary to refer to that case further than to say that it was held therein that, because the city council did not determine the kind and quantity of material to be used in the work in advance of advertising for bids of contractors, the contract was void.   While the above-cited case was pending, the suit at bar and other actions were commenced by the contractors or their assignees upon the paving certificates which had been issued in pursuance of the contract which was held to be void.   These cases, including the one now before the court, had not been tried at the time that the *Coggeshall Case* was finally disposed of in this court.   In the meantime the city council, by ordinance and other proceedings, made a reassessment of the cost of paving, and issued new certificates, in the belief that such a remedy against abutting owners was authorized under chapter 44 of the Acts of the Twenty-second General Assembly, which was approved April 16, 1888.   It appears to us that a proper construction of this act is conclusive of the whole controversy.   We, therefore, set it out in full. It is as follows:

"Section 1. That in cities of the first class, and cities organized under special charter, whenever, by reason of an alleged non-conformity to any law or ordinance, or by reason of any omission or irregularity,

any special tax or assessment is either invalid, or its validity is questioned, the city council may make all necessary orders and ordinances, and may take all necessary steps to correct the same, and to reassess and to re-levy the same, including the ordering of work, with the same force and effect as if made at the time provided by law or ordinance relating thereto, and may reassess and re-levy the same with the same force and effect as an original levy. Whenever any apportionment or assessment is made, and any property is assessed too little or too much, the same may be corrected and reassessed for such additional amount as may be proper, or the assessment may be reduced even to the extent of refunding the tax collected.

"Sec. 2. Any special tax upon reassessment or relevy shall, so far as is practicable, be levied and collected as the same would have been if the first levy had been enforced.

"Sec. 3. Any provision of any law or ordinance, specifying the time when, or the order in which, acts shall be done in a proceeding which may result in a special tax, shall be taken to be subject to the qualifications of this act.

"Sec. 4. Any and every ordinance or part thereof of any such city, heretofore passed, in substantial conformity with this act, is hereby legalized."

After this act was passed, the city council passed an ordinance in which all of the proceedings previously had in the matter of the paving in question were ratified, adopted and confirmed, and a reassessment of the amount claimed to be due from the owners of abutting lots was made on the twenty-fourth day of July, 1889, upon which the paving certificate in this case was issued. While these proceedings were pending the defendants and other property-owners presented to the city council a protest, which was as follows:

"The undersigned, who are plaintiffs in the paving suit of *Coggeshall v. The City of Des Moines*, 78 Iowa,

235, recently decided by the supreme court of the state, understanding that the city council propose to reassess against the property of the plaintiffs in that suit the alleged cost of paving the streets in front thereof, under contracts already held illegal and void by the said decision, hereby respectfully protest against any further action upon such illegal and void contracts, and deny that they can be made the basis of any assessment whatever, of any kind or' nature, against the property of the plaintiffs in that suit.''

It will thus be seen that the question before us involves the validity of this second assessment. The defendants made no resistance thereto on any other ground than that above set out. There is nothing in all this record from which any inference can be drawn to the effect that the paving was not properly done, or that the city council or any of its officers were guilty of any dishonest practices in the letting of the contracts or the prosecution of the work. In the *Coggeshall Case*, above cited, the contracts were void, because the council did not first specify and determine the kind of paving to be laid down. In a petition for rehearing in that case the effect of the act of the twenty-second general assembly above set out was elaborately discussed, and in view of that fact, and to the end that the opinion of the court might be fairly understood, a short supplementary opinion was filed, in which the following language was used: ''It is proper, however, to say that the decree in this case should limit the operation of the injunction to the assessment and levy which are held to be void in the foregoing opinion, and to them only. It is not intended by the opinion to affect any other rights which the contractor or the city may have to enforce payment for the paving, if they have any such rights, a question which we do not now determine.'' It is conceded that it is within the power of the legislature to legalize any defect in proceedings of this kind if the defect or omission or want of com-

pliance with the law is such that it might have been dispensed with by a prior statute. We understand this to be the rule in all courts in this country. *Boardman v. Beckwith,* 18 Iowa, 292; *State v. Squirs,* 26 Iowa, 340; *Richman v. Supervisors,* 77 Iowa, 517, and other cases cited in 1 McClain's Digest, page 261. Some of the cited cases hold that the defective proceedings may be made valid by subsequent legislation, where by reason of the defect or omission the proceeding was absolutely void. It was, therefore, competent for the legislature to have passed an act legalizing the proceedings by declaring that the contracts for the paving should be valid, notwithstanding the omission to comply with the statute in the matter of determining the kind of material before advertising for bids. It was competent for the legislature to have provided that the work might be let to bidders without first determining the material to be used, and to take bids for any kind of material, and let the contracts for that kind which it was thought would best subserve the public interests. And the authorities cited hold that this curative legislation may be enacted while suits are pending in the courts involving the validity of the defective proceedings.

Having determined these preliminary questions we come to the pivotal question in the case, which is, does

1. MUNICIPAL corporations: special assessment based on void paving contract: legalizing act: reassessment.

the act above set out, and the proceedings under it, cure the defect which was held under the paving contracts to be void in the *Coggeshall Case?* The act in question is not a local act, applying directly and specially to the letting of these contracts. But that is no valid objection. If it applies to any and all cases of special tax or assessment, it includes the tax in question, and it applies to any special tax or assessment which is invalid, or its validity questioned. It is immaterial when the tax was assessed, or when the city council failed to conform to the law. It applies to acts

previously done, as well as proceedings in the future. By its very terms it applies to any tax which is either "invalid or its validity is questioned." That was the very condition of the matter in issue at the time this act was passed. The validity of the tax was then questioned by the action pending. The act attached to the existing laws and proceedings somewhat upon the same principle by which it was held in *Wilkerson v. Rahrer*, 11 Sup. Ct. Rep. 865, that the recent legislation of congress applied to the laws in the several states prohibiting the sale of intoxicating liquors. See, also, *Haskell v. City of Burlington*, 30 Iowa, 232.

It is insisted, however, with great vigor and earnestness, that the contract was void because of the infirmity inhering in it, and that it is not cured by the act under consideration, because the act refers to a void tax or assessment, and authorizes merely a correction and reassessment and relevy. This is the doubtful question in the case. If nothing more was authorized by this act than a mere reassessment based upon a reletting of the work, the acts of the city council in pursuance of the act would not cure the defect in the letting of the contracts. That was impossible, because the work could not be relet. It was already done, and all that remained to be done was payment to the contractors for their material and labor. In our opinion the act was more general and far-reaching in its meaning and scope than the defendants concede. It provides for validating an assessment or proceeding where there is an alleged "non-conformity to any law." This surely is broad enough to include the omission complained of originally in this case. It further refers to any "omission or irregularity." This clause is sufficient to include the omission and irregularity in letting the contracts. It empowers the city council to cure these defects by orders and ordinances, even to the ordering of the work, if that is necessary to be done, and, when

these orders and ordinances are made, then to reassess and relevy the tax. This construction is aided by the third section of the act, which provides that any provision of any law specifying a time when, or the order in which, acts shall be done, shall be taken to be subject to the qualifications of this act. It is to be conceded that the meaning of this section is not at all clear. As applied to the time when the kind of paving material should be determined by the council, that time is qualified by this act by the provision that the nonconformity to the law might be cured by proper orders and ordinances.

Having reached this conclusion, it is not necessary to discuss other questions in the case, so far as the validity of the tax is involved; and, while we consider that the question thus determined is not free from doubt, it is well to remember that a special assessment for street improvements is now regarded everywhere as a tax, and subject to the same rules in many respects as ordinary taxation for revenue. The defendants are in the position of resisting the payment of taxes. If successful, the inequitable result will be that, while other owners of property on these streets pay their assessments, the property of the defendants is enhanced in value without cost to them. It may be that the paving was let at an exorbitant price, or that it was not properly done, or that there were other reasons why the assessment should be less than it is; but, when the reassessment was made, the only response to the notice upon the defendants was the protest above set out, to the effect that the question was adjudicated, and that under that adjudication the defendants were released from any assessment. A tax, although assessed without any authority of law, may be legalized. *Boardman v. Beckwith*, 18 Iowa, 292. The assessor represents the sovereignty of the state, and the ultimate question to be determined by the court is whether the property-owner is required by the collector to pay more than his

just share of that public burden.  He may escape for
the time being, and postpone the collection by reason
of informality and non-compliance with the laws in
force at the time.  But, as we have seen, it is within
the power of the legislature to remedy all these defects
in the exercise of the taxing power, and make it
applicable to erroneous levies and assessments thereto-
fore made.  The only restriction there upon this man-
ner of legalizing legislation is that the taxes must
not be for an unlawful purpose.  As is well said in
Cooley on Taxation, 233:  "If it [the tax] was void
because of want of legislation justifying it, it may be
reassessed after proper legislation has been had.  If it
was void because of a disregard of apportionment, or
for any reason affecting a part of the list only, it may
be reassessed with the proper corrections, where correc-
tions are practicable.  And here it may be observed
that a judicial decision against the first proceedings, if
based upon errors and defects merely, and not upon
the vicious nature of the tax itself, is not a bar to a
reassessment."  It will thus be seen that there can be
no final adjudication so long as the legislature by
proper enactment obviates the difficulty.

II.  The court allowed the plaintiff a fee of five per
cent. as a collection fee.  This allowance is complained

2. —: —: —: of by the appellants.  This appears to be
interest:
expense of    correct under section 479 of the Code.
collection.   That section is not repealed, so far as the
collection fee is concerned, by chapter 168 of the Acts
of 1886, and the holder of the certificate has the same
right to recover the collection fee as the city would
have.  It is where the owner of abutting property
agrees in writing to pay the certificate that the recovery
is limited to the amount.  The court also allowed inter-
est on the certificate at the rate of ten per cent. from
the date of the reassessment.  This, we think, was also
authorized by the statutes above cited.

III. The plaintiff appeals because he was not allowed interest on the warrant from the date of the first assessment. This was correct. The first assessment was void. There was no money due from the defendants until a lawful assessment was made. The plaintiff also appeals because the costs of the suit up to the time of the reassessment were taxed to the plaintiff. This was manifestly just. When the action was commenced, the plaintiff had no valid claim against the defendants, and the costs made thereon previous to the second assessment should be paid by the plaintiff. The decree will be affirmed on both appeals, and ten dollars of the costs in this court will be taxed to the plaintiff, that being about the cost made by reason of his appeal. AFFIRMED.

GRANGER, J. (dissenting).—I cannot concur in the construction placed upon the act of the twenty-second general assembly by the majority opinion. In the case of Coggeshall v. City of Des Moines, cited in that opinion, this court held that, because of a failure on the part of the city council to conform to the law in the particular of specifying the kind and quantity of the material to be used in making the pavement, the contract was void, and, hence, not enforceable. In this case the contract is held valid, and, hence, enforceable, because of the act in question. It is not as to the authority of the legislature to pass an act to legalize what was adjudged illegal on the part of the council that I make this contention, but it is as to what the legislature actually did; insisting, as I must, that the act was never designed to have the effect given it by the holding in this case. To a clear understanding, let us first look to what the council did, in pursuance of the act, to make legal that which was adjudged illegal, and then test the value of validity of such doings by the act itself. It will be. conceded that, before a valid reassessment or relevy could be made, the omission

which before rendered such acts invalid must in some manner be cured. The only act done by the council to cure such omission is the passage of an ordinance— to quote from the majority opinion—"in which all of the proceedings previously had in the matter of the paving in question were ratified, adopted and confirmed," after which a reassessment was made. The act of the council then was, independent of the legislative act, to ratify, adopt and confirm what was adjudged to be void. It is now proper to inquire whether or not the act confers on the council any such authority. I may here say that, if the legislature in question does confer such authority on a city council, it is a practical removal of all legislative restraints or requirements precedent to the assessment and levy of taxes for public improvements; for, however wide the departure from legal requirements, however void their acts may be, they have only to pass an ordinance ratifying, adopting and confirming their illegal proceedings, and they thus become legal, and a valid basis for the assessment and levy of taxes. Before such an intent should be imputed to the legislature, because so manifestly against good policy and sound legislative judgment, the act should be free from the doubts in which it is clothed by the majority opinion. It will readily be seen, by reference to the act, that it in no way attempts to change the law as to the requirements or steps to be taken in letting contracts for such improvements; but it does attempt to provide a way by which, when there is an omission, irregularity or non-conformity to the law, the council may correct its action in such respects,—that is, so change it as to conform to the law by doing the acts necessary therefor; and to that end it may aid itself by proper orders and ordinances. There is nothing in the act to in any manner indicate that by its operation any of the requirements in letting such contracts are removed, or that the city council may by orders or ordinances

remove or avoid such requirements; but where they
have failed to observe them they may take steps to
correct the wrong,—make it conform to the law, not
correct or change the law to conform to the illegal acts,
which is the only correction made in this case in the
particular in which the acts were adjudged illegal.    The
state of the law under the ruling in this case will be
this:    The statute requires that in letting contracts for
such improvements the council must "determine in
advance the kind and quantity of material to be used
in the proposed work," and for a failure to do so the
contract is void.    *Coggeshall v. City of Des Moines,
supra.*    But, after rendering such acts void by such an
omission, it may by an ordinance ratify and confirm
the void proceedings, and they become valid.    I cannot
believe the legislature had in view such a result in the
enactment of the law.    The fact that in this case, the
work had been done before the act was passed, and
the omission could not be corrected by complying with
the law, may call for legislation to meet such a case; but
that fact in no way aids the construction given the law
by the majority opinion.    We are not to presume the
law was designed to meet every emergency.    In cases
where the omission cannot be corrected by the aids
which the law gives, it has no application, and the
courts, because of a hardship, have no authority to
extend its operation.    Further, I do not think the act,
barring the third section, has any legalizing force in
the proper sense of the term.    It contains no language
conveying the idea that by its own operation it is to
make legal what was before illegal or doubtful, or in
any manner to change the effect of existing laws as to
particular facts or conditions.    It is merely permissive
in allowing a city council to correct its wrongs or
mistakes where it can be done, and providing a way
therefor.    The third section of the act has a legalizing
effect, but its operation is limited to ordinances "hereto-
fore passed," which could not include the ordinance in

question, because it was not then in existence.   From
the record it appears that these defendants have prof-
ited by the labor and expenditure of the plaintiff or
his assignor under a misapprehension of either the
facts or the law, and I would gladly welcome and
apply any rule of law to give relief, but I do not find
such a rule in a proper construction of the act under
which it is sought.   I think we should reverse the
judgment.