CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant,
v. E. H. STREEPY et al., Appellees.

CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, Appellant,
v. BOARD OF SUPERVISORS, Appanoose County,
et al., Appellees.

No. 40386.

APRIL 10, 1931.

*J. G. Gamble* and *A. B. Howland,* for Chicago, Rock Island & Pacific Railway Company, appellant.

*H. E. Valentine, W. D. Eaton,* and *J. C. Pryor,* for Chicago, Burlington & Quincy Railroad Company, appellant.

*John Fletcher,* Attorney-general, *Neill Garrett,* Assistant

Attorney-general, and *W. B. Hays,* County Attorney, for appellees.

GRIMM, J.—There are here two cases, but we will treat them as one.

In 1924, the fortieth general assembly of Iowa, in extra session, passed what is commonly known as the "Local Budget Law", which became effective May 2, 1924. Section 64 of said act (Chapter 4, Acts Extra Session Fortieth General Assembly) reads as follows:

*"Estimate for Emergencies.* Each municipality may include in the estimate herein required an estimate for emergency or other expenditure which amount cannot reasonably be foreseen at the time the estimates are made, and such emergency fund shall be used for no other purpose."

This section became Section 373 of the Code of 1924 and is Section 373 of the Code of 1927.

In making up the tax levy for county purposes for Appanoose County for the year 1926, the board of supervisors included therein a levy designated as "County Emergency Levy," and the same was spread upon the tax lists of the county. The property of the plaintiff was assessed with said tax, and the first half thereof was paid, under protest, before April 1, 1927. In June, 1927, the plaintiff railway company brought a suit in equity, setting forth the facts, and praying for a writ directed to the board of supervisors to refund to the plaintiff the sum paid, asking a writ of injunction "restraining and enjoining defendant county from proceeding to collect the balance of the tax and directing and ordering said county to cancel the last half of said taxes." On August 25, 1927, the lower court held against the plaintiff. This case was then appealed to this court, and on March 5, 1929, this court rendered a decision reversing the lower court in its refusal to refund the taxes. *Chicago, R. I. & P. R. Co. v. Streepy,* 207 Iowa 851. The holding in that case is based upon the proposition that Chapter 4 of the Acts of the Extra Session of the Fortieth General Assembly, in so far as the same included Section 64 of said act (Section 373, Code of 1924 and Code of 1927) was unconstitutional because the title of the act was not sufficient, there being no

sufficient reference therein to the so-called emergency fund. Thereafter, a procedendo was issued by the clerk of this court, and the same was filed in the district court of Appanoose County, directing the latter court to act in accordance with the decision and opinion of this court in each of said cases. Within a few days after the decision of this court in said *Streepy* case, the legislature of the state of Iowa, being then in session, passed the act which became Chapter 396 of the Acts of the Regular Session of the Forty-third General Assembly, which became effective April 2, 1929, and is a legalizing act, which reads as follows:

### "TAXATION. LEGALIZING.

"An act to legalize any and all tax levies heretofore made and collected by any municipality under and pursuant to the provisions of law as contained in Section three hundred seventy-three (373) and Chapter twenty-four (24) of the Code, 1927.

"BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF IOWA.

"Section 1. All taxes heretofore assessed, levied or collected by any municipality as defined by the law as it appears in Chapter twenty-four (24) of the Code, 1927, for the purpose of establishing and creating an emergency fund under and pursuant to the provisions of what purported to be the law as contained in Section three hundred seventy-three (373) of the Code, 1927, be and the same are hereby declared legal and valid, and where the same have not been paid, the officers of such municipalities are hereby empowered and directed to proceed at once to collect the same as other taxes are collected, and to use the same in the same manner as they could have been used were they assessed, levied and collected under a valid provision of law."

Thereafter, the plaintiffs herein filed in said district court a motion for judgment and decree "directing a refund by the county treasurer, or, in the alternative, to command the said defendants to direct the county auditor to draw a warrant upon the county treasurer for the amount paid for the first half of 1926 taxes, payable in 1927." To this a resistance was filed, on the 2d day of January, 1930. The lower court held for the defendants. The lower court found that the forty-third general assembly had legalized the acts of the board of supervisors in

levying the tax of which complaint was made. This appeal is from this ruling by the lower court.

In June, 1930, this court decided the case of *Chicago, R. I. & P. R. Co. v. Rosenbaum*, 212 Iowa .........., in which the plaintiffs resisted the collection of the so-called "emergency tax" in Muscatine County. Many of the questions presented on this appeal have been determined in said case, and no further reference need here be made thereto.

According to the appellant, "there is but one issue in this case: that is, whether the decision rendered by this court herein [*Chicago, R. I. & P. R. Co. v. Streepy*, 207 Iowa 851] is to stand, or whether this court is to recognize Chapter 396, Acts of the Forty-third General Assembly, enacted by the legislature subsequent to the rendering of said decision, as controlling, and overruling said decision."

Generally speaking, it is the contention of the appellant that the holding of this court in *Chicago, R. I. & P. R. Co. v. Streepy*, 207 Iowa 851, fixed the rights of the parties, and entitled the plaintiff to a refund of the taxes paid, and that, after said decision, the legislature was without power to pass a legalizing act which could in any wise modify the plaintiff's right to recover said taxes, as fixed in said decision.

At the outset, it will be borne in mind that this court did not hold that the legislature did not have the power to provide for the said emergency fund by delegating to the several boards of supervisors in the state the right to create such a fund. The act was held unconstitutional only because the title of the act was not sufficiently comprehensive, in that it did not include any proper reference to the section providing for the emergency fund. As was said in *Chicago, R. I. & P. R. Co. v. Rosenbaum*, 212 Iowa .........:

"It is not asserted by the appellant that there is any constitutional provision that prohibits a delegation by the legislature to the municipalities of the power to create and make a levy for an emergency fund. Therefore, for the determination of the case which we have before us, we may properly assume that the previous statute is constitutional, except as held by us that the title to the act is insufficient to include the subject-matter contained in Section 373, or, in other words, that there would have been a valid grant of power to the municipalities, except for the

insufficiency of the title to the act. We may properly assume that, had the title to the act been sufficient, then the validity of the tax involved herein could not be called in question.''

"Municipality,'' as used in the foregoing language, includes boards of supervisors of counties. See Section 369, Code of 1927.

The plaintiffs (appellants) contend that, after this court found for the plaintiffs, there remained only the mere formal act on the part of the lower court to render a decree in accordance with the holdings of this court; that the rights of the parties had been determined and fixed; and that, after the ruling of this court, the plaintiffs-appellants were entitled to a refund of the money they had paid out. They contend that no legalizing act could be passed which, retroactively, could affect the rights of the plaintiffs as determined by the finding of this court. It is further contended that, if the legalizing act referred to is to be permitted to override the finding of this court in *Chicago, R. I. & P. R. Co. v. Streepy*, 207 Iowa 851, that would amount to an unwarranted and improper interference between the legislative branch of the government and the judicial branch.

As to the contention that the legislature had no power to pass a retroactive legalizing act, the law is that, if the legislature possessed the power in the first place to authorize the levy and collection of the taxes in question, then it had the power, by retrospective act, to cure any defect which may have obtained in the assessment and collection of such a tax. *Chicago, R. I. & P. R. Co. v. Rosenbaum*, 212 Iowa ........., and cases cited.

Moreover, thus exercising this power by the legislature is not an impairment of any vested right of the taxpayer's. *Chicago, R. I. & P. R. Co. v. Rosenbaum*, 212 Iowa ........; *Boardman v. Beckwith*, 18 Iowa 292. See, also, *Iowa Railroad Land Co. v. Soper*, 39 Iowa 112; *Tuttle v. Polk & Hubbell*, 84 Iowa 12. Some of the foregoing cases have been dealt with at length in *Chicago, R. I. & P. R. Co. v. Rosenbaum*, 212 Iowa ......... This court there said:

"In *Boardman v. Beckwith*, 18 Iowa 292, 294, by reason of a change in the revenue laws of the state, there was no provision whatever for a levy of taxes for the year 1858, but, notwithstanding the want of authority, an assessment and levy were made. In 1860 the legislature passed an act legalizing said assessment

and levy and authorized the collection of the same as taxes levied under the provisions of existing laws. The case involved the validity of the sale of lands for the taxes of that year, and by virtue of the legalizing act the sale was sustained. In that case, as in this, much stress was placed upon the fact that the levy of tax was void, and the opinion in effect concedes the illegality of the levy, but it clearly maintains the doctrine that it was competent for the legislature to make valid that which was before void. This court therein made the following pronouncement: 'The point made upon this legislation is that it was not competent for the General Assembly to thus legalize the levy and assessment of 1858; that as there was no law at the time authorizing such levy and assessment, all proceedings thereunder, notwithstanding the curative act, were illegal and void. * * * That it is competent to thus legislate we entertain no doubt. The power of the legislature to pass acts of this character, conducive as they are to the general welfare, and based upon considerations of controlling public necessity, is, in our opinion, undoubted. It does not interfere with vested rights, nor impair the obligation of any contract. Nor is it, we may remark in further answer to appellants' argument, a general statute, having other or less than a uniform operation. It has the operation contemplated by Art. 3, Sec. 30, of the State Constitution; for in no just legal sense is it local or special, but general and uniform.' In *Iowa Railroad Land Co. v. Soper*, 39 Iowa 112, 118, a certain tax, known as a judgment tax, levied by the board of supervisors, had been declared by this court as illegal. A legalizing act very similar to the one herein involved was enacted by the legislature. The validity of the tax and the legalizing act were attacked on many grounds. The court there comments upon the previous decision in *Boardman v. Beckwith*, 18 Iowa 292, saying: 'It seems to us that there is no ground for distinction between that case and the one before us. The act of 1874 [the one therein involved] purports to render legal and valid certain tax levies which were not legal and valid at the time of the levies, so did the act of April 2, 1860 [the act involved in *Boardman v. Beckwith*]. * * * If it was competent for the General Assembly to pass the act above referred to, whereby the illegal and void taxes levied in 1858 [those involved in *Boardman v. Beckwith*] were legalized and their collection authorized, it

was likewise competent for the legislature to pass the act under consideration, and thereby make the taxes to pay judgments, which had been levied in excess of legal authority, valid and collectible. There is no valid argument to sustain the former which does not apply to and sustain the latter act. In both cases it is a question of power and not one of policy. Of the power to pass the act in question, we entertain no doubt. * * * There can be no doubt that the General Assembly had the power, and might have enacted a law under which the various municipal corporations in the State would have been authorized to levy and collect the taxes in question. In other words, the authority to levy and collect taxes to pay judgments against municipal corporations could have been conferred by a general law without any limitation therein as to the rate, so that the taxes, legalized by the act under consideration, would have been authorized and valid. Having the power to authorize, by general law, the levy and collection of special taxes, by municipal corporations, without limitation as to rate, for the purpose of paying judgments, the legislature may rightfully legalize or cure the levies made in excess of lawful authority at the time. * * * *When it is conceded that the General Assembly has the power to pass an act conferring authority upon municipal corporations to levy taxes, it necessarily follows that the same power may. cure or ratify and make valid the taxes levied without such prior authority, unless vested rights are thereby impaired* [the italics are ours]. * * * But the legalizing of a tax, which but for the legalizing act was invalid and not capable of being enforced, does not interfere with any vested right of the taxpayer. * * * The statute has created a liability to pay where none existed before its passage, and this is so whether the act authorizing the tax levies be passed prior thereto or is an act legalizing a tax previously levied. In either case the power of the General Assembly to pass the law is the same. *If it has no power to legalize a tax already levied without authority, it has no power to confer the authority in the first instance* [writer's italics]. Since the power of the legislature to delegate to the municipalities the right or power to create and make a levy for an emergency fund is not questioned by the appellant, it necessarily follows that, under the foregoing authorities, the legislature may, by a curative act, legalize the taxes and the acts of the municipalities and

their officers in levying the same, done without such prior authority. Appellant's contention in this respect must fail. For additional authorities bearing on the foregoing propositions, see *Iowa Railroad Land Co. v. Carroll County*, 39 Iowa 151; *Richman v. Supervisors Muscatine County*, 77 Iowa 513; *Peverill v. Board of Supervisors*, 201 Iowa 1050; *Chicago, R. I. & P. R. Co. v. Independent Dist. of Avoca*, 99 Iowa 556; *City of Clinton v. Walliker*, 98 Iowa 655; *Ferry v. Campbell*, 110 Iowa 290; *Hodges v. Snyder*, 45 S. D. 149 (186 N. W. 867); *Hodges v. Snyder*, 261 U. S. 600 (67 L. Ed. 819); *Rafferty v. Smith, Bell & Co*, 257 U. S. 226 (66 L. Ed. 208); *Utter v. Franklin*, 172 U. S. 416 (43 L. Ed. 498); *Jenkinson v. Hilands*, 146 Pa. St. 380 (23 Atl. 394)."

The legalizing act in this case was passed after a reversing ruling by this court, but before any judgment was entered in the lower court in harmony with said ruling. We do not regard it necessary to enter into a discussion of the question whether this fact has any material bearing on the question at issue on this appeal. The parties are here dealing with public, not private, rights. In other words, the right involved is one between the power of a taxing board, acting for and on behalf of the public, and the plaintiff railway company, a taxpayer. In *Richman v. Supervisors Muscatine County*, 77 Iowa 513, proceedings were instituted by the boards of supervisors of Muscatine and Louisa Counties, for levying taxes for improvements on Muscatine Island. This court held the taxes levied by the board of supervisors to pay for the same to be void. The legislature then passed a legalizing act, and the case came back, to test the legality of the legalizing act. This court said:

"It is urged with much earnestness that the prior suit in this court between these parties constitutes a bar to any proceedings under the Curative Act for the assessment and collection of these taxes, on the ground that by such adjudication the assessment and levy thereof were declared void. The taxes in the former suit were avoided on the ground that there had been no legal assessment or levy. The object of the Curative Act was to create an obligation on the part of those who had been benefited by the improvement to pay therefor. The act makes direct reference to the adjudication, and provides for a reap-

portionment and reassessment with a view to a redetermination of the question of liability. We think it was competent for the legislature to so provide. * * * The former trial determined no vested interest or right, and is in no sense a bar to the proceeding under the new law.''

See, also, *Iowa Railroad Land Co. v. Soper*, 39 Iowa 112; also, *City of Clinton v. Walliker*, 98 Iowa 655; *Ross v. Board of Supervisors*, 128 Iowa 427.

The appellants here are complaining because of the conduct of the trial court in refusing to grant orders in conformity with the reversing order of this court. At the time the trial court was so requested, the legalizing act had been passed. It was incumbent upon the lower court to treat appellants' application or motion in the light of the law then existing. Previous to that time, the legislature had legalized the taxes in question. The net result of the appellants' position in the trial court at that time was that they were seeking to have the court make an order for the payment to the appellants of taxes which had been properly collected. The mere fact that the legalizing act had·been passed while the litigation was pending gave the plaintiffs no vested right; for the bringing of a suit vests no right in a particular decision. *Huff v. Cook*, 44 Iowa 639; *Boardman v. Beckwith*, 18 Iowa 292; *Chicago, R. I. & P. R. Co. v. Rosenbaum*, 212 Iowa .........

It will be recalled that this appeal is from a refusal by the trial court to sustain a motion by the plaintiff asking for a judgment and decree in favor of the plaintiff, directing the issuance of a writ of mandamus, commanding the defendants and each of them, as members of the board of supervisors, to direct the county treasurer to refund the taxes paid. There was no final judgment. We are not called upon to determine what might have been the result, had a final judgment been entered in favor of the appellants prior to the enactment of the curative act, but on this question see *Hodges v. Snyder*, 261 U. S. 600 (67 L. Ed. 819); *Rafferty v. Smith B. & Co.*, 257 U. S. 226, 232 (66 L. Ed. 208, 210); *U. S. v. Heinszen & Co.*, 206 U. S. 370 (51 L. Ed. 1098); *Richman v. Supervisors Muscatine County*, 77 Iowa 513; *Chicago, R. I. & P. R. Co. v. Rosenbaum*, 212 Iowa ........., and cases cited.

It cannot be said, as claimed by the appellants, that there

has been any interference with the powers of the judiciary of this state by a co-ordinate branch of the state government, the legislature. In harmony with the decision of this and other states and the Federal courts upon facts such as appear in this cause, it was within the power of the legislature to enact the legalizing act in question, and thereby legalize retroactively the original taxes involved in this case.

The plaintiffs (appellants) were not entitled to the relief asked. All the questions presented by the appellants have been carefully considered, and we find no ground for reversal.

The cause must be, and is,—*Affirmed.*

FAVILLE, C. J., and STEVENS, ALBERT, MORLING, KINDIG, and WAGNER, JJ., concur.

EVANS, J., dissents.