Joe SCHWARZKOPF, et al., Appellees,

v.

SAC COUNTY BOARD OF SUPERVI-SORS, Defendants,

State Association of Iowa Rural Water Systems, Inc., now known as Iowa Rural Water Association, Intervenor-Appellant,

West Central Iowa Rural Water Association, Intervenor-Appellant.

No. 68740.

Supreme Court of Iowa.

Nov. 23, 1983.

**2**

Fred L. Dorr of Wasker, Sullivan & Ward, Des Moines, for intervenor-appellant Iowa Rural Water Ass'n.

Claus H. Bunz of Hansen & Bunz, Manning, for intervenor-appellant West Central Iowa Rural Water Ass'n.

Colin J. McCullough of McCullough Law Firm, Sac City, for appellees.

LARSON, Justice.

A group of local residents formed a rural water district in Sac, Carroll and Crawford Counties for the purpose of pumping and distributing water to its members. *See* Iowa Code ch. 357A (1977). This local system was known as the West Central Iowa Rural Water Association, a nonprofit corporation. A permit to withdraw water was granted to the Association by the Natural Resources Council over the objection of some of the residents of the area, including these plaintiffs. No judicial review was sought by the objectors. To facilitate construction of the pipeline, the Sac County board of supervisors granted certain easements to the association. After a series of district court hearings and two appeals in the Iowa Court of Appeals, the district court held in the most recent action that a curative act claimed to grant authority for the easements is unconstitutional. We reverse and remand.

The local association obtained easements from private landowners for the construction of most of the pipeline in areas adjacent to the roadways. In those instances when it was necessary to cross the road with the pipeline, or when the association was unable to obtain private easements, however, it sought easements on road rights-of-way. The easements were granted by the Sac county board in 1976, and the line was constructed as planned. Approximately six of the 176 miles of pipeline in the system were installed on the rights-of-way in Sac County. (The other two counties also granted easements for use of county roads, apparently without objection).

These plaintiffs attacked the easements on the ground the board lacked statutory authority to grant them. The local water association, joined by the intervenor State Association of Iowa Rural Water Systems, Inc. (now known as Iowa Rural Water Association), countered that the board had authority to grant the easements by reason of a statutory amendment and a curative act by the legislature. (We will refer to the parties aligned on the side of the original defendants as "the association.") It appears to be undisputed that the pipeline system cannot be effectively used if the local water system is denied the right to pipe water across the county rights-of-way in Sac County. The association and intervenor argue in effect that the plaintiffs, who failed to prevent issuance of the permit to withdraw water, are merely using this suit as a spigot to shut off the whole system.

I. *The Standing Issue.*

■ The association contends that the plaintiffs lack standing to challenge the

constitutionality of the curative act in question. The plaintiffs' standing, however, was not challenged until after passage of the curative act, which was after both court of appeals decisions had been rendered and which followed the filing of the petition by over four years. The objection to standing now raised by the association is based on the principle that a private citizen cannot enforce a public right, *Viet Nam Veterans Against the War of Veterans' Memorial Auditorium Commission*, 211 N.W.2d 333, 335 (Iowa 1973). While this might have had merit if timely asserted, the association has waived this objection by failure to raise it in a timely manner. *See Cole v. City of Osceola*, 179 N.W.2d 524, 527–28 (Iowa 1970); cf. *In re Marriage of Stutzman*, 311 N.W.2d 73, 74 (Iowa 1981).

II. *The Statute.*

In 1976, when the board of supervisors granted this easement, it relied upon the language of Iowa Code section 320.4 which then provided:

> The state department of transportation in case of primary roads, and the board of supervisors in case of secondary roads, on written application designating the particular highway and part thereof, the use of which is desired, may grant permission:
>
> 1. *To lay gas and water mains in highways outside cities to local municipal distributing plants or companies, but not to pipe-line companies.* This section shall not apply to or include the pipe-line companies required to obtain a license from the Iowa state commerce commission.

(Emphasis added.)

III. *The Procedural History.*

The procedural history of this case is long and complex. The plaintiffs' petition for declaratory judgment, challenging the board's granting of the easements, was filed in 1977. The association answered, asserting that the board had authority under section 320.4 to grant the easements and if it was held that section 320.4 pre-

cluded granting of the easement, it was unconstitutional. Both sides filed motions for summary judgment to determine the board's authority under section 320.4.

The trial court concluded that a proposed grantee was qualified to obtain a county easement under section 320.4 if it was either (1) a "municipal distributing plant" or (2) a "company ... [other than a] pipeline company." It ruled in favor of the defendants on both counts, sustaining their motion for summary judgment and denying the plaintiffs' motion.

On appeal, the court of appeals reversed on the ground the pipeline company was not a "municipal" entity. It did not discuss the alternative ground of authority relied on by the district court that the pipeline company was a "company ... other than a pipeline company." Following remand, and in response to a motion by the plaintiffs seeking an "order in conformity with the court of appeals decision," the district court traced the history of the proceedings to that point. It noted that the procedendo following the court of appeals decision had directed it to "proceed in the manner required by law consistent with the opinion of the court of appeals." It then stated:

> This is where the matter now stands[:] In accordance with the Procedendo, it is ordered by this Court for further proceedings, but such proceedings must be consistent with the appellate court's opinion. To be consistent with its opinion for certain, the Summary Judgment entered is set-aside; and further, it must be and is the law of this case that the Defendant water association is not entitled to a permit from the Board of Supervisors on the gounds [sic] that it is a quasi municipal corporation.

A "number of unanswered questions" remaining after the appeal, it ruled, would have to await future rulings.

On October 22, 1979, the plaintiffs renewed their summary judgment motion which had been filed in 1977, and the association filed a motion to adjudicate law points. The plaintiffs' summary judgment

motion was overruled. The court again related the history of the proceedings and the effect of the court of appeals' decision, concluding that the court of appeals had adjudicated only the propriety of the summary judgment for the association and left unanswered several other issues. At the same time, it ordered the association's application for adjudication of law points be "held in abeyance until this case is submitted on the merits," which occurred in a few months. In the later ruling, the court held the association was entitled to obtain an easement because it was not a "pipeline company" under the statute.

A second appeal followed. Again, the case was transferred to the court of appeals, which again disagreed in the interpretation of section 320.4. It held it made no difference whether the association fell outside the term "pipeline company" because, in any event, it was not a "municipal" company under the statute. The procedendo, dated March 3, 1982, again mandated that further proceedings be held "in accordance with law and the court of appeals decision."

Following the second reversal by the court of appeals, the plaintiffs sought an injunction restraining maintenance of the pipeline, and the association again filed a rule-105 application for adjudication of law points. This time a new dimension was added: the effect of the curative statute granting authority retroactively and passed by the legislature after the latest court of appeals ruling.

The district court ruled against the defendant on its rule-105 application, holding the curative act was unconstitutional as an "invasion of the province of the judiciary." The plaintiffs' applications for an injunction and "other relief" were not granted, however, the court stating that any attempt by the plaintiffs to force removal of the pipeline would have to be by new proceedings and would require "a substantial showing." This is where the proceedings now stand.

## IV. *The Curative Act.*

Neither the interpretation of the 1979 legislation, which expanded the scope of section 320.4, nor of the 1981 curative act which made the 1979 act retroactive, is at issue here. This appeal turns on the narrow issue of whether the 1981 curative act is constitutional. If it is, the board's previous actions in granting the easements were made valid. If the curative act is invalid, so was the granting of the easement, because it is clear neither the original version of section 320.4 nor the 1979 amendment which expanded its scope, authorized the prior granting of these easements.

There is no question as to a legislature's power to retroactively cure defects in existing statutes or to modify them to restrict or expand their reach. The general rule is that a legislature may do anything by curative act which it could have done originally. See *City of Muscatine v. Waters*, 251 N.W.2d 544, 548–49 (Iowa 1977); *Chicago, Rock Island and Pacific Railway Co. v. Rosenbaum*, 212 Iowa 227, 231, 231 N.W. 646, 648 (1930); *Windsor v. City of Des Moines*, 110 Iowa 175, 179, 81 N.W. 476, 477 (1900); *Richman v. Supervisors Muscatine County*, 77 Iowa 513, 519–20, 42 N.W. 422, 425 (1889).

A curative act is a statute passed to cure defects in prior law, or to validate legal proceedings, instruments, or acts of public and private administrative authorities which in the absence of such an act would be void for want of conformity with existing legal requirements, but which would have been valid if the statute had so provided at the time of enacting.

Except as it may invade some substantive interest which enjoys specific constitutional protection, a curative act may validate any past action which the legislature might have authorized beforehand, or make immaterial any requirement which might have been omitted from the original legislation. The rule is sometimes stated negatively, that a legislature cannot by subsequent act cure an original lack of power or retroactively

authorize that which was originally beyond its jurisdiction. This proposition finds further expression in the rule that the legislature cannot do indirectly what it could not do directly.

2 Sutherland, *Statutes and Statutory Construction* § 41.11, at 289–90 (4th ed. C. Sands 1973).

The plaintiffs argue that two exceptions, both rooted in the constitution, prevent retroactive application of the 1981 curative act. First, they claim it is an impermissible intrusion by the legislature into the powers reserved to the courts under our constitutional separation of powers. Second, they claim they have vested rights which would be lost if the curative act were made retroactive to validate the easements.

V. *The Separation of Powers Argument.*

Article III, section 1 of the Iowa constitution provides for separation of powers of state government:

The powers of the government of Iowa shall be divided into three separate departments—the Legislative, the Executive, and the Judicial: and no person charged with the exercise of powers properly belonging to one of these departments shall exercise any function appertaining to either of the others, except in cases hereinafter expressly directed or permitted.

The plaintiffs argue that under the two decisions of the Court of Appeals which preceded the 1981 curative act, the actions of the board were held to be without jurisdiction; and to allow the legislature to retroactively change that result would obscure the lines of power, in effect allowing a legislative overruling of a court decision. They base their argument upon the general principle that "jurisdiction" is a matter solely within the realm of the judiciary. *See McSurely v. McGrew,* 140 Iowa 163, 167, 118 N.W. 415, 417–18 (1908); 2 Sutherland, *supra,* § 41.14 at 294.

The separation-of-powers argument here boils down to this: When the legislature extended the scope of the county's easement-granting power, in 1979, and then made it retroactive in 1981, was it dealing with "matters of jurisdiction" or was it merely adopting a broader scope of the statute which it could have adopted in the first place?

In this case "jurisdiction" is used quite generously. It appears to be used, simultaneously, in reference to (1) the power of the board of supervisors to grant easements to a nonmunicipal entity, (2) the powers of the legislature to enact legislation nullifying the effect of prior litigation, and (3) the court's subject-matter jurisdiction, which is the real key to the separation-of-powers argument. Even if we assume the defect in the board's action granting the easement was "jurisdictional" as it was characterized by the district court, this does not necessarily preclude legislative action. As one author points out, the term jurisdiction can mean different things in different contexts, and the power of a legislature to involve itself in the issue depends upon what type of jurisdiction is involved:

It is important to distinguish between "jurisdictional" requirements prescribed by constitutional provisions and those established by ordinary legislation. There is a marked difference, for example, between the jurisdiction of the legislature on the one hand and the jurisdiction of courts and other public officers and agencies on the other. A legislature clearly cannot grant jurisdiction to itself where, because of constitutional or territorial restrictions it has none. Thus, the legislature may not validate its own jurisdictional defects. On the other hand, the legislature can legalize actions taken without compliance with statutory requirements by which a court or other public agency acquires jurisdiction.

2 Sutherland, *supra,* § 41.14, at 294–95.

Therefore, the separation-of-powers principle is violated if the legislature purports to use powers not granted to it by the constitution or usurps powers granted by it to another branch, here the courts. Simply stated, "the legislature cannot exercise judicial powers, and cannot reverse,

vacate, or overrule the judgment or decree of a court." *Wilcox v. Miner*, 201 Iowa 476, 478, 205 N.W. 847, 848 (1925). *See State v. Ronek*, 176 N.W.2d 153, 155 (Iowa 1970) ("separation of powers concept ... [prohibits] one department's exercising another's powers....") It is obvious from a reading of article III, section 1 of our constitution quoted above and the language of *Ronek* that crossing the lines of power in *any* direction violates the separation of power concept. We must, of course, guard against overextension of legislative powers; we must also, however, avoid our own infringement upon the constitutional powers of the legislature in our efforts to protect our own. Accordingly, our cases have established that there is no constitutional impediment to curative legislation merely because it affects pending, or even completed, litigation. The general rule as to pending cases has been stated by the court of another state:

> Curative acts may apply to pending proceedings, and, while the legislature cannot annul or set aside the judgment of a court, it may remove a defect on which the judgment proceeded.

*Independent School District v. State Board of Education*, 289 P.2d 379, 381 (Okl.1955).

▬▬ The principle is well illustrated by our court in *McSurely*, 140 Iowa at 163, 118 N.W. at 415, involving a curative act which attempted to assert authority of *both* the legislative and judicial branches. That case contrasts the effect of the two facets of the act under the separation-of-power principle. In *McSurely*, the legislature had passed a statute (1) legalizing the acts of the county board of supervisors in discharging the bond of a retiring county treasurer and (2) voiding any action brought or attempted to be brought in court by any citizen upon the bond, declaring any such action to be "without jurisdiction and void." The court held the first part of the statute to be properly within the legislature's power, but that the second was an unconstitutional infringement on judicial powers. It said:

> Remembering that this action was commenced before the curative act became effective, it is apparent ... that the second section thereof [voiding any action brought or attempted to be brought upon the bond] is unconstitutional and beyond the power of the Legislature.... Such matters are purely judicial, and not legislative, and under our three-department system of government it is inadvisable for one to assume the powers, duties, or responsibilities of the other. When action is once commenced the question of jurisdiction is purely a judicial one, and the Legislature should not attempt to usurp the functions of the judiciary by such an act as is now under consideration.

*Id.* at 167, 118 N.W. at 417–18. Similarly, this court has held that the legislature cannot mandate to the judiciary how it should interpret a particular statute. Interpretation is a judicial, not a legislative function, *Sioux City v. Young*, 250 Iowa 1005, 1007–08, 97 N.W.2d 907, 909 (1959); and it cannot abrogate by retroactive legislation a purely court-based rule of immunity for witnesses entering the state to testify in another matter. *Frink v. Clark*, 226 Iowa 1012, 285 N.W. 681 (1939):

> The decision, as to the validity of service of process, properly challenged because of immunity extended to a non-resident litigant while in attendance at the trial of a case in which he was a defendant, is a judicial function. The legislature is without power to control the exercise of such function by the courts. When it undertook to dictate to the courts what the decision should be in cases pending before the statute was enacted, it assumed to exercise power that it does not possess.

*Id.* at 1020, 285 N.W. at 685. The legislature cannot arbitrarily decree that courts are without subject matter jurisdiction in a certain class of cases then pending in the courts. *See McSurely*, 140 Iowa at 167, 118 N.W. at 417–18.

▬▬ On the other hand, if the curative legislation is not a direct legislative asser-

tion of judicial power but merely a belated assertion of a power inherently possessed by the legislature, the curative act does not violate the separation principle. This is so even though it might have the ultimate effect of nullifying a judicial ruling.[1] *Richman v. Supervisors of Muscatine County,* 77 Iowa 513, 42 N.W. 422 (1889), is a case close in point. There, the action of the board of supervisors in approving a levy project was initially held by the supreme court to be void for "lack of jurisdiction" because the applicants had failed to file a petition for the establishment of the levy as required by statute. *See Richman v. Board of Supervisors,* 70 Iowa 627, 630, 26 N.W. 24 (1885). A curative statute, enacted after the decision by the supreme court and attempting to legalize the proceedings, was challenged on the ground that "the legislature undertook to make valid such acts of the board [of supervisors] as [the supreme] court had adjudged to be void" and that "where there is a want of such jurisdiction, and their acts are for that reason void, no curative act can ever reach them." *Id.* 77 Iowa at 518, 519, 42 N.W. at 424. This court concluded, however, that because the legislature could have dispensed with the filing of the petition in the first instance,[2] it could retroactively legalize establishment of a levy without it. This was so, even though it had the effect of nullifying the decisions of both the district court and this court. The "jurisdiction" found to be lacking under the prior decision was not a matter of the court's power to deal with the case but rather with the lack of statutory authority of the board of supervisors, a matter which the legislature was empowered to modify. *Id.*

Other Iowa cases supporting this principle include *Iowa Electric Light & Power Co. v. Town of Grand Junction,* 221 Iowa 441, 454, 264 N.W. 84, 90 (1935) (contract proceedings by town held by court to be void; later curative act held not to be unconstitutional interference with judiciary); *Chicago, Rock Island and Pacific Railway Co. v. Rosenbaum,* 212 Iowa 227, 231 N.W. 646 (1930) (curative act legalizing statute previously held by court to be void not infringement on judiciary); *Chicago, Rock Island and Pacific Railway Co. v. Streepy,* 211 Iowa 1334, 1338, 236 N.W. 24, 26 (1931) (act previously held unconstitutional because of inadequate title amended by legislature; held not infringement); *Gill v. Patton,* 118 Iowa 88, 91 N.W. 904 (1902) (original assessment held void by district court; legalizing act held valid); *Windsor v. City of Des Moines,* 110 Iowa 175, 179–80, 81 N.W. 476, 477 (1909) (curative act binding, even though passed after district court decree); *Iowa Savings and Loan Association v. Heidt,* 107 Iowa 297, at 303, 77 N.W. 1050, 1052 (curative act, passed after decree); *City of Clinton v. Walliker,* 98 Iowa 655, 660, 68 N.W. 431, 432 (1890) (curative act legalizing street assessment after court action commenced, held valid); *Tuttle v. Polk & Hubbell,* 84 Iowa 12, 15–16, 50 N.W. 38, 39 (1891) (curative act legalizing paving contract, previously held by supreme court to be void, valid exercise of power); *Huff v. Cook,* 44 Iowa 639, 641 (1876) (curative act binding, even though passed after decree). *See also Schlenz v. Castle,* 84 Ill.2d 196, 49 Ill.Dec. 322, 417 N.E.2d 1336 (Ill.1981) (statute retroactively validating untimely assessment publications; held not violative of separation-of-powers although previously held void by supreme court). *See generally.* Anno. "Validity of curative statute impairing judgment or rendering it ineffective," 17 A.L.R. 1352 (1947).

The curative act in question does not offend the constitutional separation of powers. While the *effect* of the court of appeals decisions was nullified by the cura-

---

1. It should be noted that belated assertion of the power might be unconstitutional if it affects "vested" rights. This is not a separation-of-powers matter, however, but rather one based on due process, a separate consideration discussed later.

2. It should be noted that no question of due process was raised. The court in concluding that the petition could have been dispensed with did not address the question of notice to the affected parties.

tive act, the legislature merely furnished authority for the board of supervisors which the court of appeals had found lacking in the prior statute; it did not challenge the power of the court to make that decision.

In summary, we find the curative act did not constitute legislative construction of the same statutory language construed by the court of appeals. Instead the act purported merely to authorize the easements of a new statutory ground. Moreover, no constitutional barrier prevented the association from resisting issuance of the injunction on the new statutory ground. The separation of powers doctrine does not dictate that the propriety of the injunction could be attacked only after it was issued. The substance of the doctrine was not implicated by the procedure employed here.

### VI. *The "Vested Rights" Argument.*

Another exception to the general rule of the validity of curative acts arises when legislation deprives a party of "vested" rights. *Chicago, Rock Island and Pacific Railway Co. v. Streepy,* 211 Iowa at 1338, 236 N.W. at 26; *McSurely,* 140 Iowa at 169, 118 N.W. at 418; *Windsor,* 110 Iowa at 179, 81 N.W. at 477; *Iowa Savings and Loan Association v. Heidt,* 107 Iowa 297, 303, 77 N.W. 1050, 1052 (1899); 2 Sutherland, *supra,* § 41.06, at 268.

While the plaintiffs did not couch this argument in constitutional terms, the rule that a curative act cannot deprive one of vested rights is premised on traditional due process principles. *See* 2 Sutherland, *supra,* § 41.16, at 298–99.

■ A party has no vested right, however, in a particular result of litigation, and a curative act may affect litigation already in progress. *Id.; Windsor,* 110 Iowa at 179–80, 81 N.W. at 477.

[A] right is not "vested" unless it is something more than a mere expectation, based on an anticipated continuance of present laws. It must be some right or interest in property that has become fixed or established, and is not open to doubt or controversy.

(Citation omitted). *Leach v. Commercial Savings Bank,* 205 Iowa 1154, 1165, 213 N.W. 517, 521 (1927).

■ In this case, the plaintiffs have no more than an expectation of a favorable final ruling. As this court said in *Windsor,* however, "[t]his is a suit in equity, and is triable *de novo* in this court. Until final decree is passed, there is no vested right to be disturbed, and the case must be determined on the law as it now stands. These are elementary propositions...." The interest that these plaintiffs had in the subject matter of this lawsuit was not a "vested" right which protects them from the effect of a curative act.

The district court erred in concluding the curative act in question was unconstitutional. Accordingly, we reverse and remand.

REVERSED AND REMANDED.

All Justices concur except HARRIS and SCHULTZ, JJ., who dissent, and REYNOLDSON, C.J., who takes no part.

HARRIS, Justice (dissenting).

I respectfully dissent. " 'The Legislature may say what the law shall be, not what it is or has been....' " *Richardson v. City of Jefferson,* 257 Iowa 709, 717, 134 N.W.2d 528, 533 (1965); *Richardson v. Fitzgerald,* 132 Iowa 253, 255, 109 N.W. 866, 867 (1906). I do not doubt the legislature's power to authorize retroactively the granting of the easements in question. The majority is wrong, however, in holding that the retroactive power to grant the easements amounts to a retroactive vacation of two appellate decisions.

It is to be remembered that this controversy, including both prior appeals as well as the present one, was encompassed within a single lawsuit. The prior decisions by the court of appeals establish that the easements were void and that the Sac county board of supervisors acted in excess of its authority in attempting to grant the easements.

Plainly the two appellate decisions were final. *See* Iowa Code § 684.36(2) (1983).

The decisions also finally disposed of all questions involved in the litigation. After the second reversal the matter was returned to district court for entry of an order in accordance with the appellate opinion. The majority seems to suggest there was some indication in the second court of appeals opinion that further matters were to be litigated on remand. I do not so read that opinion. It was succinct and most explicit, concluding:

> The grant of easement is without legislative authority and is therefore invalid. We need not address plaintiff's second issue as our conclusion above is dispositive of that issue.
> REVERSED.

The procedendo issued by the clerk is quoted by the majority, apparently in the belief that its form wording reflects on the scope of the remand. I do not think it does. There was nothing left to litigate.

Thereafter intervenors filed their application to adjudicate law points which plaintiffs resisted on the ground that: "[t]he legal issues in this matter have been judicially determined ...."

It would have been inappropriate for the district court at such a juncture to reverse the court of appeals, even though armed with a propitious amendment to Iowa Code section 320.4.

The majority misapplies a good rule. When a case is remanded for *retrial* after appellate reversal, a newly effective statutory change of a procedural matter will be applied in the retrial. *Reich v. Miller*, 260 Iowa 929, 937–38, 151 N.W.2d 605, 610 (1967). In *Reich* we quoted from and relied on 5B C.J.S. *Appeal and Error* section 1964(e). But, as the same authority elsewhere makes clear, a different rule necessarily applies when an appellate decision, as the one here did, ends the litigation.

> Where ... the appellate court by its decision and directions puts an end to the litigation, the lower court is without jurisdiction except to comply with whatever directions are made.... Matters disposed of and determined by the opinion and decision of the appellate court cannot be relitigated in the trial court.... Thus, where the appellate court has tried the case de novo, its judgment is final and nothing remains for the trial court to do except to enter the judgment.

> Except where the cause has been remanded for a new trial, or such procedure is contemplated by statute, the trial court is not authorized or obliged after remand to pass on, or to grant relief as to, rights accruing during the pendency of the appeal, such matters being properly left for adjudication in new proceedings.

5B C.J.S. *Appeal and Error* § 1965 (1958).

Our cases are in accord. *Kuhlmann v. Persinger*, 261 Iowa 461, 469, 154 N.W.2d 860, 864 (1967) (where "the vital question involved in the first appeal was settled, ... it became the law of the case, and ... the remand allowed ... no authority to make a contrary order."); *Emery Transportation Co. v. Baker*, 257 Iowa 1260, 1264, 136 N.W.2d 529, 531 (1965) (prior appellate decision on question of jurisdiction was res judicata to date of determination in trial court).

Perhaps the Iowa case closest in point is *City of Sioux City v. Young*, 250 Iowa 1005, 97 N.W.2d 907 (1959), a case in which the legislature was persuaded to change a principle after it was decided on appeal. We pointed out why the change (retrospectiveness of a police pension fund) could not affect the litigation involved in the prior appeal. There, as here, different appeals involved the same parties, the same subject matter and the same cause of action. We said:

> After we had ... interpreted the amendments the ... General Assembly ... attempted to change the nonretroactive construction we had put upon them.... It must be the contention of the defendant here that the legislature thereby overruled our interpretation of the amendments made by the [prior] General Assembly, and that we are now bound to follow the legislative fiat. We do not agree. *The legislature had a right to*

*say whether its enactments were retrospective or prospective, as applied to future interpretations; it did not have the right to direct the courts how its statutes were to be construed with reference to matters already decided.* We have construed the amendments made by the [prior] General Assembly as applied to a certain case; the legislature may not, by later enactment, direct us to change our interpretation as it affects this same litigation. In *Richardson v. Fitzgerald*, 132 Iowa 253, 255, 109 N.W. 866, 867, we said: "... any direction by the legislature that the judicial function shall be performed in a particular [certain] way is a plain violation of the Constitution." Immediately following this, ... we quoted with approval from Cooley on Constitutional Limitations (7th Ed.) 114: *"As the Legislature cannot set aside the construction of the law already applied by the courts to actual cases,* neither can it compel courts for the future to adopt a particular construction of a law which the Legislature permits to remain in force." (Italics supplied.) We further said, at the same pages: "Expository legislation is so uniformly condemned by the courts that we need cite no more than a few of the numerous decisions with our approval for the principle. [Citing authorities.]

*Id.* at 1009–10, 97 N.W.2d at 910–11 (emphasis added).

The majority is wrong in surrendering to the legislature a fundamental constitutional power entrusted to the judicial branch of government. We should not make it possible for the legislature to sit in review of an appellate court's decision on pending litigation, and change its outcome by enactment of a statute to take effect before the decision is complied with by the trial court. I would affirm.