CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant, v. E. H. STREEPY et al., Appellees.
CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, Appellant, v. BOARD OF SUPERVISORS OF APPANOOSE COUNTY et al., Appellees.

MARCH 5, 1929.

*H. S. Greenleaf, J. G. Gamble,* and *A. B. Howland,* for Chicago, Rock Island & Pacific Railway Company, appellant.

*H. E. Valentine, W. D. Eaton,* and *J. C. Pryor,* for Chicago, Burlington & Quincy Railroad Company, appellant.

*John Fletcher,* Attorney-general, *Neill Garrett,* Assistant Attorney-general, and *W. B. Hays,* County Attorney, for appellees.

852

ALBERT, C. J.—The board of supervisors of Appanoose County, in making the levy of taxes for 1926, included, with others, and made levy of, an emergency fund of 8.34 mills, and appellants paid this under protest. Two actions are involved herein: one by the Chicago, Rock Island & Pacific Railway Company, and the other by the Chicago, Burlington & Quincy Railway Company. They were consolidated in the lower court, for the purpose of trial, and also in this court. They were commenced to compel repayment of the taxes paid under protest, and involved both the question of statutory construction and the constitutionality of the act. The statutes involved are a part of Chapter 24 of the Code of 1924, and are designated in Section 368 as the "Local Budget Law." This law, as originally passed, was Chapter 4 of the Acts of the Extra Session of the Fortieth General Assembly, which provides for the office of budget director, his appointment, qualifications, term of office, removal, suspension, filling vacancy, salary, and employees, and designates his powers and duties to carry out and enforce all provisions of this act, to conduct hearings, adopt rules governing appeals, hearings, etc., and to compel production of evidence upon examinations or hearings. This is the substance of the matters covered in Chapter 1 of the act. Chapter 2 provides that all state departments shall make a detailed statement of the receipts of the department; second, an estimate of the needs of the department for the ensuing biennial period; and third, any other information that the director may require. Chapter 3 authorizes the director to make examination and settlement between the state and all state officers and the departments. Chapter 3-A provides for an appeal board in certain cases. Chapter 4 governs public contracts and bonds. Chapter 5 provides for a local budget, and is designated as the "Local Budget Law." By Section 60, of this chapter, municipalities include all counties, cities, towns, townships, school districts, road districts, drainage districts, and all other public bodies or · corporations that have power to levy a tax or certify a tax or sum of money to be collected by taxation; and they are placed under the control of the budget director.

Section 61 prohibits all of these various bodies from certifying or levying any tax until the following estimates have been made and filed:

"1.   The amount of income thereof for the several funds from sources other than taxation.

"2.   The amount proposed to be raised by taxation.

"3.   The amount proposed to be expended in each and every fund and for each and every general purpose during the fiscal year next ensuing.

"4.   A comparison of such amounts so proposed to be expended with the amounts expended for like purposes for the two preceding years."

Section 64 provides as follows:

"Each municipality may include in the estimate herein required an estimate for emergency or other expenditure which amount cannot reasonably be foreseen at the time the estimates are made, and such emergency fund shall be used for no other purpose."

The budget director is given power to approve the transfer of money from one fund of a municipality to another, but it is further provided that it shall not be necessary to return the emergency fund when it is once transferred. The title to this act is as follows:

"An act creating the office of director of the budget, defining his powers, prescribing his duties, and providing for a state budget and examination of the accounts of the departments of the state and review of public contracts and bond issues in certain cases, and for local budgets, and prescribing the methods for the appointment of the director of the budget and members of an appeal board in certain cases, defining their powers and duties and making an appropriation therefor, also amending, revising and codifying Section 94 of the Compiled Code of Iowa, relating to certain duties of the governor," and certain other sections of the Code, with which we are not interested at the present time.

It is further provided that, when these estimates have been made, as provided in this law, and approved by the budget director, they shall be certified to the levying board, and by such board levied as a tax on all assessable property.

Several questions are raised as to the construction and valid-

ity of this act; but, as we view it, the disposition of one of these questions will be decisive of this lawsuit.

It is urged that certain provisions of this act are unconstitutional, and with this contention we agree.

It will be noticed from the foregoing general summary of the law that, among other things, it is provided that an emergency fund is to be created. This is a new, distinct, and definite fund, heretofore unknown under the statutes of this state. It is also provided that the proper bodies may make and file an estimate of the amount of money wanted from this fund, and when this estimate is approved by the budget director, it is certified (in the instant case to the county auditor), and is levied by the board of supervisors upon all of the assessable property within the county. The same method is marked out for all municipalities other than the county. Aside from this provision of the act, there is no provision in the statutes authorizing the levy of the tax for an ''emergency fund.'' The defendants, appellees herein, insist that this statute does authorize and warrant the levying of such a tax for the purpose of creating an emergency fund. We take the defendants at their word, and go forward in the discussion of this question on the theory that this statute does warrant the levying of a tax for an emergency fund.

Strange as it may seem, this is the first time the legislature of Iowa has ever seen fit to authorize any legal body to levy a tax without limiting the same. Under this provision of the statute, the right of the estimating body to fix this levy is unlimited and unbounded. We do not now stop to consider the question of what emergency is intended to be covered and paid from this fund, other than to suggest that the use of the word in this setting in the act is anticipatory of something to happen in the future. It was not intended to levy this fund to be used to liquidate existing indebtedness. The statute itself is inconsistent, in that it provides that, when such fund has been created, it shall be used for no other purpose, and later in the act, it provides that it may be transferred to other funds, and not returned.

The real question, however, is whether or not, by reason of this provision as to the creation of an emergency fund and the other provision authorizing the municipality to cause a tax to be levied on the assessable property within the municipality for this emergency fund, this statute is a violation of the provisions

of Article III, Section 29, of the Constitution of the state of Iowa, reading as follows:

"Every act shall embrace but one subject, and matters properly connected therewith; which subject shall be expressed in the title. But if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be expressed in the title."

We answer this question in the affirmative. There is nothing whatever said in the title to this act about the creation of a new fund, known as the "emergency fund," nor is there anything said in such title that would indicate that authority was being conferred by the legislature upon a municipality to warrant the levy of such a tax.

In discussing this constitutional question, Judge Cooley stated the reasons for such provisions as follows:

"It may therefore be assumed as settled that the purpose of these provisions was: First, to prevent hodge-podge or 'log-rolling' legislation; second, to prevent surprise or fraud upon the legislature by means of provisions in bills of which the titles gave no intimation, and which might therefore be overlooked and carelessly and unintentionally adopted; and, third, to fairly apprise the people, through such publication of legislative proceedings as is usually made, of the subjects of legislation that are being considered, in order that they may have opportunity of being heard thereon, by petition or otherwise, if they shall so desire." 1 Cooley's Constitutional Limitations (8th Ed.) 295, 296.

One of the mischiefs to be prevented is the enactment of laws under false and delusive titles, whereby measures might procure support of legislators who are deceived as to the character of the law, and also to prevent the conjunction in one act of two or more subjects having no legal connection, for the purpose of the passage of a law which alone might not command legislative sanction, without the strength of a popular measure in the same act. It is to prevent such tricks in legislation that the Constitution forbids the passage of any law unless the subject be expressed in the title, and in a like manner, inhibits the embodying in the same act of two or more subjects having no legal connection; and when it is clear that this provision of the

Constitution has been disregarded, we must not hesitate to proclaim the supremacy of the Constitution.

We have held, in accord with many other states, that one of the tests of this question is whether or not the matter about which complaint is made, is incongruous with the general subject-matter specified in the title. See *State v. Gibson*, 189 Iowa 1212; *Clear Lake Co-op. L. S. S. Assn. v. Weir*, 200 Iowa 1293; *Cook v. Marshall County*, 119 Iowa 384, and other cases cited therein. But that is not the only test. As suggested in the above quotation from Judge Cooley, the question is, Is there anything in the title of the bill that would suggest or even give intimation that it provided for a new fund, and also conferred power upon the municipalities to levy a tax to create such fund? We think not. Anyone reading the title to this act would never suspect that, buried therein, were provisions for the creation of a new fund and the conferring of power upon the municipalities to levy a tax therefor.

In the case of *Des Moines Nat. Bank v. Fairweather*, 191 Iowa 1240, in a discussion of the question of the validity of the title to an act, we said:

"Under the Constitution (Section 29, Article 3), if the subject-matter of an act be not expressed in the title, the act is void as to such subject. When it is considered that a legislative body has thrust upon its consideration during a brief session hundreds of proposed bills, and that the labor cast upon a member, in order to enable an intelligent understanding of proposed acts, is a stupendous one, and is necessarily performed with some degree of imperfection, we can readily see how important this constitutional requirement is to intelligent legislation. If the title of a bill fairly discloses the general nature and objective of a proposed act, the attention of the legislator is thereby challenged. Public attention is also challenged thereby. If the title withholds such disclosure, or by indirection conceals it, such a course can operate only in aid of stealthy legislation. As to the title of this act, it contained nothing which fairly tended to challenge the attention of a legislator or the public to its nature or scope, or to the stupendous consequences of its operation. It is almost incredible that the consequences appearing in this case could have been contemplated by the legislature. When it is considered that there are in existence United States securities to

the amount of more than two thousand millions of dollars, and that these may be bought in the market any day by any bank and may be sold again upon the same market, either early or late, the possibilities are astounding.''

As applied to the facts in the case before us, the amount assessed was 8.34 mills, which far exceeds any levy heretofore allowed by the legislature to any municipal body in taxing property; and it may be that, in many instances where counties have attempted to avail themselves of this statute, the levy of tax made by them was much in excess of that made by the county in the case at bar.

Appellees rely largely on the case of *Fevold v. Board of Supervisors*, 202 Iowa 1019, where the act under consideration in the first place was an amendatory act to existing legislation, and also provided additional methods for the eradication of bovine tuberculosis, and to promote the health and welfare of the citizens of the state. That case was ruled on the doctrine of *Cook v. Marshall County*, 119 Iowa 384, where it was held that:

'' 'It is admissible to include in a statute means which are reasonably adapted to secure the objects indicated by the title.' '' Further, it is said: ''Everything connected with the main purpose and reasonably adapted to secure the objects indicated by the title may be embraced in the act, without violating the constitutional inhibition.''

This shows that the *Fevold* case has no application to the situation before us. It was not reasonable or necessary, to secure the object indicated in the title to the present act, that a new fund should be created, or that power should be conferred upon a municipality to levy a tax to create such fund. More than this, the title to the act in the *Fevold* case would put one upon inquiry, not only as to the method and means of the eradication, but as to the fact that expense would be necessary to accomplish the purpose of the act, and that a fund would be needed therefor.

In the case of *State v. Manhattan Oil Co.*, 199 Iowa 1213, the title to the act read:

''An act providing for the supervision and regulation of persons either natural or artificial engaged in the transportation

of persons or property for hire over the public highways of the state by motor vehicles, and conferring certain jurisdiction over such persons and such vehicles upon the board of railroad commissioners of the state; also providing for the enforcement of this act and for the punishment of violation thereof.''

We there held that, because the act provided for a levy of a tax for the maintenance and upkeep of the public highway, which was not expressed in the title, such title was fatally defective.

In the case of *Wrought Iron Bridge Co. v. Town of Attica*, 119 N. Y. 204 (23 N. E. 542), quoting from the previous decision in *In re Application of the Mayor*, 99 N. Y. 569 (2 N. E. 642), it is said:

'' 'Where one reading a proposed bill, with the title in his mind, comes upon provisions which take him by surprise, which he could not reasonably have anticipated, and so both citizen and legislators are misled and thrown off their guard, it is our duty to declare the condemnation of the fundamental law.' ''

In *Maule Coal Co. v. Partenheimer*, 155 Ind. 100 (55 N. E. 751), in discussing this question, under a constitutional provision identical with that of our state, the court said:

''To express the subject of a statute in the title, in compliance with the requirement of the Constitution, no particular form or terms are exacted, nor is it essential that such subject be expressed with precision. The title will sufficiently conform to the command of the Constitution if it be so framed and worded as fairly to apprise the legislators and the public in general of the subject-matter of the legislation, so as reasonably to lead to an inquiry into the body of the bill. The constitutional requirement may be interpreted to mean that the act and its title must correspond, not literally, but substantially; and such correspondence is to be determined in view of the subject-matter to which the legislation relates.''

In 1 Lewis' Sutherland Statutory Construction (2d Ed.) 201, the rule is thus stated:

''It is required not only that an act shall contain but one subject, but that that subject be expressed in the title. The title, thus made a part of each act, must agree with it by ex-

pressing its subject; the title will fix bounds to the purview, for it cannot exceed the title-subject, nor be contrary to it. An act will not be so construed as to extend its operation beyond the purpose expressed in the title. It is not enough that the act embraces but a single subject or object, and that all its parts are germane; the title must express that subject, and comprehensively enough to include all the provisions in the body of the act. The unity and compass of the subject must, therefore, always be considered with reference to both title and purview. The unity must be sought, too, in the ultimate end which the act proposes to accomplish, rather than in the details leading to that end."

It is apparent from these authorities that incongruity is not the only test for the determination of this question. As suggested by the New York court, if one had in mind the title to the act under consideration in the case at bar, he certainly would be surprised when he read in the body of the act that there was a provision for the creation of a new fund and the conferring of power upon municipalities to levy a tax to create such fund. Nothing of that kind is indicated in the title to this act; hence we conclude that, in so far as the act provides for an emergency fund, and confers power to levy the same, these provisions, not being specified in the title, are in violation of the constitutional inhibition, and therefore void. This, of course, is limited to the part of the act which makes these provisions, and does not in any way affect the remainder of the act.—*Reversed.*

De Graff, Kindig, and Wagner, JJ., concur.

Evans, J. (specially concurring).—If it be supposed that there is existing legislation creating an "emergency fund," as distinguished from emergency items in any fund, I agree that it is unconstitutional. But I think that no such legislation has been in fact enacted. Legislation cannot be enacted by mere *implication.* That is all that we have here. See Section 373, Code of 1924. There is no other form of enactment than appears therein.

Faville, J., joins herein.