UTILICORP UNITED INC. d/b/a Peoples
Natural Gas Company, Plaintiff–
Movant,

v.

IOWA UTILITIES BOARD, UTILITIES
DIVISION, DEPARTMENT OF
COMMERCE, Defendant.

No. 96–1399

Supreme Court of Iowa.

Nov. 26, 1997.

Rehearing Denied Jan. 9, 1998.

Helen C. Adams and Philip E. Stroffregen of Dickinson, Mackaman, Tyler & Hagen, P.C., Des Moines, and Floyd R. Finch, Jr. and David L. Rein, Jr. of Blackwell, Sanders, Matheny, Weary & Lombardi, L.C., Kansas City, MO, for plaintiff-movant.

Diane Munns and Gary D. Stump, Des Moines, for defendant.

Thomas J. Miller, Attorney General, and Elizabeth M. Osenbaugh, Solicitor General, for amicus curiae State of Iowa.

HARRIS, Justice.

We are asked by certified questions[1] whether section 12 of 1996 Iowa Acts chapter 1196 (prohibiting nonutility use of equipment paid for by utility customers) violates various provisions of the Iowa Constitution. Finding no such violations, we answer all questions in the negative.

The bill in question, including its section 12, enacted by the 76th Iowa General Assembly, is referred to in the certified questions as Senate File 2370. Senate File 2370 is entitled:

> An Act relating to energy efficiency programs, electric and gas public utility energy efficiency mandates, and the Iowa energy center and the center for global and regional environmental research and requiring the location of a principal office within the state and providing an effective date.

It is significant that all provisions in Senate File 2370 relate to various provisions in Iowa Code chapter 476. The scope and purpose of Iowa Code chapter 476 is clear. Many times amended, it originated as 1963 Iowa Acts chapter 286, entitled:

> An Act to authorize the Iowa state commerce commission [now the utilities board] to regulate the rates and services of public utilities, to define public utilities to include those engaged in the furnishing of electricity, gas, water or communications services to the public for compensation, and to provide for appeals from orders and decisions of the Iowa state commerce commission.

Code chapter 476 now contains more than 100 sections, divided into thirteen divisions. Senate File 2370 amended several of them, affecting different divisions of the Code chapter. *See, e.g.,* 1996 Iowa Acts ch. 1196, § 7 (amending Iowa Code § 476.2) (location of utility's principal office for Iowa operations); § 13 (amending Iowa Code § 476.83) (filing and processing written complaints). The section under challenge here, section 12 of Senate File 2370, amends Iowa Code section 476.78, entitled "Cross-subsidization prohibited." This section has been in place as part of our public utility chapter for several years. Iowa Code sections 476.71 through 476.83 (the subdivision of the public utility chapter subtitled "Public Utility Affiliates") were added to the public utilities chapter by 1989 Iowa Acts chapter 103 to impose requirements on public utility affiliates in order to assure "that a public utility should only pro-

---

1. The three questions were certified by United States District Court for Southern Iowa pursuant to Iowa Code chapter 684A and a local federal rule.

vide nonutility services in a manner that minimizes the possibility of cross-subsidization or unfair competitive advantage." 1989 Iowa Acts ch. 103, § 2 (codified at Iowa Code § 476.71 (1991)).

Prior to enactment of Senate File 2370, Iowa Code section 476.78 provided:

A rate-regulated gas or electric public utility shall not directly or indirectly include any costs or expenses attributable to providing nonutility service in regulated rates or charges.

Section 12 adds in part:

Except for contracts existing as of July 1, 1996, a rate-regulated gas or electric public utility or its affiliates should not use vehicles, service tools and instruments, or employees, the costs, salaries, or benefits of which are recoverable in the regulated rates for electric service or gas service to install, service, or repair residential or commercial gas or electric heating, ventilating, or air conditioning systems, or interior lighting systems and fixtures. . . .

Plaintiff UtiliCorp United, Inc. (UtiliCorp), through its division Peoples Natural Gas, provides natural gas services to customers in Iowa. In the 1980s UtiliCorp began an appliance maintenance program it called "Service Guard." Individual customers would contract with UtiliCorp for the program. For a monthly fee UtiliCorp would provide service to repair the customer's furnace, water heater, stove, oven, or clothes dryer. For an additional fee UtiliCorp also provided repair services for air conditioners, clothes washers, and refrigerators.

The questions before us were certified in connection with a suit in federal court. UtiliCorp brought that action seeking a declaratory judgment that, among other things, section 12 of Senate File 2370 is unconstitutional because it violates various provisions of the Iowa Constitution. The questions will be addressed in the divisions that follow.

■ I. The first of the three certified questions is two-fold. Does section 12 of Senate File 2370 violate the single-subject and title requirements of article III, section 29 of the Iowa Constitution?

■ General principles controlling our deferential consideration of challenges under this provision were summarized in *State v. Mabry,* 460 N.W.2d 472, 474 (Iowa 1990):

This provision [article III, section 29 of the Iowa Constitution] has four requirements. First, the act may have only one subject together with matters germane to it. Second, the title of the act must contain the subject matter of the act. Third, any subject not mentioned in the title is invalid. Last, an invalid subject in the act does not invalidate the remaining portions that are expressed in the title.

There are longstanding rules for determining whether an act meets the constitutional mandate of article III, section 29. First and foremost, we construe "the [act] liberally in favor of its constitutionality." Before we can say the act is invalid we must find that the act "encompass[es] two or more dissimilar or discordant subjects that have no reasonable connection or relation to each other." Even if the "matters grouped as a single subject might more reasonably be classified as separate subjects, no violation occurs if these matters are nonetheless relevant to some single more broadly stated subject."

So to pass constitutional muster the matters contained in the act must be germane. To be germane, "all matters treated [within the act] should fall under some one general idea and be so connected with or related to each other, either logically or in popular understanding, as to be part of . . . one general subject."

In addition to these rules, we use a "fairly debatable test" to determine whether the enactment of a statute complies with the constitution. Under this test "[l]egislation will not be held unconstitutional unless clearly, plainly and palpably so." And "[i]f the constitutionality of an act is merely doubtful or fairly debatable, the courts will not interfere." So "[i]t is only in extreme cases, where unconstitutionality appears beyond a reasonable doubt, that this court can or should act."

(Citations omitted.)

This is certainly not an extreme case where unconstitutionality appears beyond a

reasonable doubt. Indeed the challenge would cry out for rejection under a far less rigid test. No logrolling is involved. The act encompasses one general topic—public utilities—and amends nothing other than various provisions in the public utility chapter of the Code. It is not surprising, is in fact logical, that the legislature would consider the subject addressed in section 12 together with the other matters addressed throughout Senate File 2370. As previously mentioned, gas and electric public utilities had been prohibited generally from cross-subsidization by the same section since 1989. The public utility regulations chapter of the Code (chapter 476) was and remains an eminently logical place for a statute prohibiting cross-subsidization by a public utility. And the amendment to that prohibition—section 12— fits logically and neatly within the other sections of Senate File 2370. We therefore reject the single-subject challenge.

The title challenge is a related one. *Long v. Board of Supervisors*, 258 Iowa 1278, 1287, 142 N.W.2d 378, 383 (1966) (single subject and title requirements are independent but "closely related"). The title provision, in contrast with the single-subject provision, "was primarily directed at the legislative process" and intended primarily to prevent surprise and stealth. *Id.* Like other constitutional provisions, the title requirement is to "be given a liberal construction to permit one act to embrace all matters reasonably connected with the subject expressed in the title and not utterly incongruous thereto." *Motor Club v. Department of Transp.*, 265 N.W.2d 151, 153 (Iowa 1978). In *Motor Club* we went on to explain that

> the title need not be an index or epitome of the act or its details. The subject of the bill need not be specifically and exactly expressed in the title. It is sufficient if all the provisions relate to the one subject indicated in the title and are parts of it or incidental to it or reasonably connected with it or in some reasonable sense auxiliary to the subject of the statute.

*Id.* (quoting *State v. Talerico*, 227 Iowa 1315, 1322, 290 N.W. 660, 663 (1940)). "The enactment is constitutionally valid as to the title unless matter utterly incongruous to the general subject of the statute is buried in the act." *Western Int'l v. Kirkpatrick*, 396 N.W.2d 359, 365 (Iowa 1986).

Although few aspects of Senate File 2370 might be expected to precipitate widespread private debate, no citizen—certainly no legislator—should be surprised to find the subject of section 12 considered under the title of the act. UtiliCorp concedes in its brief that it developed its repair plan "in part to comply with its legal obligations under Iowa law to operate efficiently and economically."

The title challenge also fails under the authorities we have discussed.

II. The second certified question was: Do the classifications contained in section 12 of Senate File 2370 violate the privileges and immunities clause of article I, section 6 of the Iowa Constitution?

This article provides that

> [a]ll laws of a general nature shall have a uniform operation; the general assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms shall not equally belong to all citizens.

Under this provision the legislature must not act arbitrarily when it undertakes to classify citizens. *John R. Grubb, Inc. v. Iowa Hous. Fin. Auth.*, 255 N.W.2d 89, 95 (Iowa 1977). We test privileges and immunities challenges by the traditional equal protection analysis. *In re Chicago, Milwaukee, St. Paul & Pac. R.R.*, 334 N.W.2d 290, 294 (Iowa 1983). "Under that test the classification must be sustained unless it is patently arbitrary and bears no rational relationship to a legitimate governmental interest." *Lunday v. Vogelmann*, 213 N.W.2d 904, 907 (Iowa 1973).

UtiliCorp contends section 12 arbitrarily classifies gas and electric public utilities. There are two parts to this contention, both wrong: (1) section 12 does not create a classification; and (2) such a classification would not be arbitrary.

As mentioned, Iowa Code section 476.78 has proscribed cross-subsidization by gas and electric utilities since 1989. Section 12 of Senate File 2370 created no classification;

the challenged amendment merely elaborated on the existing proscription that already dealt only with gas and electric utilities. The elaboration (section 12) simply placed limitations on gas and electric utilities with respect to the sale, repair, or maintenance of certain equipment owned by its customers. These limitations were an attempt to place the utilities on a level playing field with other Iowa contractors providing the same services. The legislature addressed a legitimate state interest when it attempted to level the playing field.

UtiliCorp is not singled out by Code section 476.78. Both before and after its challenged amendment, it has impacted alike on all public gas and electric companies, a group logically targeted for effecting energy efficiency. Energy efficiency is surely in the public interest. Only rate-regulated gas and electric utilities are required to file energy efficiency plans, so it is reasonable and legitimate that the legislature limit the activities of these classes of utilities. *See Iowa S. Utils. Co. v. Iowa State Commerce Comm'n,* 372 N.W.2d 274, 279 (Iowa 1985) (public policy and promoting energy conservation constitutes rational basis for classifying or distinguishing utilities).

■■■ Arguments on the subject often confuse the word "promote" in the phrase "promote a legitimate governmental interest." It is axiomatic that determining the wisdom or effectiveness of legislation is not a judicial function. Section 12 promoted a legitimate governmental interest because, as we have said, energy efficiency is a legitimate governmental interest. And the legislature believed the amendment effected that goal. We think it undoubtedly related to it.

The privileges and immunities challenge also fails.

■■■ III. The third certified question was: Does section 12 of Senate File 2370 constitute a "special law," in violation of article III, section 30 of the Iowa Constitution? This challenge rests on the same grounds that formed the basis for the privileges and immunities challenge rejected in the preceding provision. The parties agree that the test and analysis are the same. *See John R.*

*Grubb, Inc.,* 255 N.W.2d at 96. For the reasons previously discussed, we find no violation under this challenge.

The answer to each certified question is thus no.

**CERTIFIED QUESTIONS ANSWERED.**

All justices concur except SNELL, CARTER and LAVORATO, JJ., who dissent; and TERNUS, J., who dissents in part.

SNELL, Justice (dissenting).

I respectfully dissent.

Section 12, Senate File 2370, Laws of the Seventy–Sixth General Assembly, is unconstitutional under the Iowa Constitution. I believe that the intent of section 12 is not to promote energy efficiency but rather is to bar rate-regulated gas and electric public utilities from providing nonutility services to their customers, which had meant a cost savings to their customers. The effect of this legislation is not to provide a level playing field for businesses in the appliance repair and service industry but to eliminate the competition of regulated public utilities.

I. Background Facts and Procedures

UtiliCorp United, Inc., plaintiff, d/b/a Peoples Natural Gas, provides numerous Iowa customers, primarily in small municipalities, with utility services. In addition, UtiliCorp offers its utility customers nonutility services in the form of an appliance repair and protection plan called Service Guard. UtiliCorp uses its employees and equipment to perform these nonutility services.

On May 20, 1996, Governor Terry Branstad signed into law, effective July 1, 1996, Senate File 2370 entitled, "An Act relating to energy efficiency programs, electric and gas public utility energy efficiency mandates, and the Iowa energy center and the center for global and regional environmental research...." 1996 Iowa Acts ch. 1196. At issue is section 12 of the Act which amends Iowa Code section 476.78 entitled, "Cross-subsidization prohibited." Prior to the amendment, the section provided, "A rate-regulated gas or electric public utility shall

not directly or indirectly include any costs or expenses attributable to providing nonutility service in regulated rates or charges." Iowa Code § 476.78 (1995). Section 12 adds, in part:

> Except for contracts existing as of July 1, 1996, a rate-regulated gas or electric public utility or its affiliates shall not use vehicles, service tools and instruments, or employees, the costs, salaries, or benefits of which are recoverable in the regulated rates for electric service or gas service to install, service, or repair residential or commercial gas or electric heating, ventilating, or air conditioning systems, or interior lighting systems and fixtures. . . .

*Id.* § 476.78 (1997).

On June 7, 1996, UtiliCorp filed a complaint in the United States District Court for the Southern District of Iowa seeking a declaratory judgment, a preliminary injunction, and other relief, naming Governor Branstad and the Iowa Utilities Board (IUB) as defendants. UtiliCorp sought, among other things, a declaration that section 12 is unconstitutional under various provisions of the United States and Iowa Constitutions. Subsequent to certification to this court, UtiliCorp dismissed Governor Branstad as a defendant. Upon the request of both parties, Judge Harold Vietor certified the following three questions on July 31, 1996:

> (1) Does Section 12 of Senate File 2370 violate the single-subject and title requirement of Article III, Section 29 of the Iowa Constitution?;
>
> (2) Do the classifications contained in Section 12 of Senate File 2370 violate the privileges and immunities clause of Article I, Section 6 of the Iowa Constitution?; and
>
> (3) Does Section 12 of Senate File 2370 constitute a "special law" in violation of Article III, Section 30 of the Iowa Constitution?

UtiliCorp argues section 12 violates (1) the single-subject requirement because it is unrelated to the remainder of the Act, which concerns energy efficiency, the Iowa Energy Center, and the Center for Global and Regional Environmental Research, and (2) the title requirement because the Act's title does not give fair notice that it implicates the ability of gas or electric public utilities "to install, service, or repair residential or commercial gas or electric" systems. UtiliCorp further argues section 12 violates the privileges and immunities clause because it classifies utilities supplying gas and electricity from those that do not, and this classification is not rationally related to the stated purpose of the Act, *i.e.*, to improve energy efficiency. Additionally, because this classification is not rationally related to energy efficiency, UtiliCorp argues section 12 constitutes a "local or special law."

The IUB contends that the alleged benefits of the Service Guard program and any alleged hardship imposed upon UtiliCorp and its customers by restricting the Service Guard program are irrelevant to the constitutionality of section 12. The IUB argues the single-subject and title requirements are not violated because the limitations imposed on the involvement of public utilities in the sale, service, repair, or installation of heating, cooling, and lighting systems are the "cornerstone of energy efficiency." It further asserts the privileges and immunities clause is not violated and section 12 does not constitute a special law because limitations on rate-regulated gas and electric utilities promote a legitimate state interest, and section 12 only adds additional limitations to the classification previously established in section 476.78.

In its amicus curiae brief, the attorney general reiterates and joins in many of the arguments set forth by the IUB. The attorney general points out that Senate File 2370 amends only chapter 476, which regulates public utilities, and no other chapters of the Iowa Code. The brief also tracks the Act through the legislative process to illustrate that section 12 was not "slipped into" the bill unbeknownst to legislators.

## II. Single-Subject Requirement

Article III, section 29 of the Iowa Constitution states:

> Every act shall embrace but one subject, and matters properly connected therewith; which subject shall be expressed in the title. But if any subject shall be embraced

in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be expressed in the title.

Iowa Const. art. III, § 29.

This provision has two distinct components: the single-subject requirement and the title requirement. In *Western International v. Kirkpatrick*, 396 N.W.2d 359 (Iowa 1986), we set forth the principles and underlying cases that are instructive in applying this constitutional provision. We said:

> General rules for analyzing whether an enactment relates to more than one subject can be found in *Long v. Board of Supervisors*, 258 Iowa 1278, 142 N.W.2d 378 (1966). Two subjects may not be covered by one act unless the subjects can be considered related to or connected with one another. *Id.* at 1283, 142 N.W.2d at 381. The constitutional provision is to be given a liberal construction. *Id.* It is unimportant that matters within the single subject might more logically be classified as separate subjects if they are nevertheless germane to a single subject. *Id.* The "one subject" rule is in place to prevent logrolling and to facilitate orderly legislative procedure. *Id.; see Green v. City of Cascade*, 231 N.W.2d 882, 886 (1975).

*Western Int'l*, 396 N.W.2d at 364.

The single-subject provision requires a showing that all subjects within the act relate to a single purpose. *Miller v. Bair*, 444 N.W.2d 487, 489 (Iowa 1989). This provision keeps legislators informed of pending bills and alerts citizens as to the subjects under consideration by the legislature. *See Giles v. State*, 511 N.W.2d 622, 625 (Iowa 1994) (stating that the purpose of the single-subject requirement is to provide reasonable notice to lawmakers and the public to prevent fraud and surprise); *State v. Mabry*, 460 N.W.2d 472, 473 (Iowa 1990) (noting the threefold purpose of the single-subject requirement: to prevent logrolling, to adequately inform legislators of pending legislation, and to fairly inform citizens of subjects the legislature is considering).

To pass constitutional muster, all matters contained in the act must be germane. To be germane, " 'all matters treated [within the act] should fall under some one general idea and be so connected with or related to each other, either logically or in popular understanding, as to be part of ... one general subject.' " *Mabry*, 460 N.W.2d at 474 (quoting *Long*, 258 Iowa at 1283, 142 N.W.2d at 381).

Section 12 of Senate File 2370 amended Iowa Code section 476.78, a section in Iowa Code chapter 476, which addresses public utility regulation. UtiliCorp argues that the language in section 12, under the heading "Cross-subsidization prohibited," is entirely unrelated to the energy efficiency subjects found in the remainder of the Act and referenced in the title. The other sections of the Act concern energy efficiency, the Iowa Energy Center and the Center for Global and Regional Environmental Research, as the title suggests.

UtiliCorp argues that section 12, in contrast, relates only to the ability of gas and electric public utilities to install, service, and repair gas and electric heating, ventilating, and air conditioning systems, and interior lighting systems and fixtures. It asserts that the subject of competition is not germane and bears no reasonable connection or relation to the purpose or ultimate objective of the Act, promoting energy efficiency. UtiliCorp claims that section 12 is in reality an anti-competition law that would effectively impede energy efficiency rather than promote it.

The IUB argues that the sale, installation, and repair of heating, cooling, and air conditioning equipment are logically and popularly understood as relating to energy efficiency. Left unanswered by the IUB, however, is how the restrictions on the provision of those services to consumers by regulated gas and electric public utilities promote energy efficiency.

The attorney general filed an amicus curiae brief for the reason that our interpretation of the single-subject provision in the Iowa Constitution may affect other acts passed by the General Assembly and is therefore of general concern to the state. Joining the arguments of the IUB, the attorney general claims that the single-subject

provision is not violated because the general subject of Senate File 2370 is the regulation of public utilities and the prohibition in section 12 is connected with that general subject. Reliance is placed on our decision in *Miller v. Bair*, in which we rejected a single-subject challenge to a mammoth bill containing wide-ranging provisions. *Miller*, 444 N.W.2d at 489–90. We rejected the argument that each matter in a bill must be similar and clearly related to the other matters contained within the bill. A bill can contain separate subjects if they are germane to a single subject or relate to a single purpose. The attorney general also cites *State v. Iowa District Court*, 410 N.W.2d 684, 687 (Iowa 1987), which stated that we will look behind specific provisions of the act to find a general subject. The attorney general claims that because every section of Senate File 2370 relates to the regulation of utilities, the single-subject requirement is satisfied.

UtiliCorp challenges the broad brush strokes painted on the single-subject provision by the IUB and the attorney general. It argues the subject of the bill is energy efficiency, not energy or utilities or regulation of utilities. Renaming the title, UtiliCorp argues, does not satisfy the Constitution.

Both the IUB and the attorney general admit that section 12 restricts competition by placing restrictions on rate-regulated gas and electric utilities in order to level the playing field with other Iowa contractors. Without these restrictions, they argue, these utilities would take advantage of the energy efficiency programs offered to their customers and would lure appliance business away from their competitors. This convoluted argument appears to suggest that the single-subject requirement is met in this case by the restriction of competition in a bill that on its face relates to energy efficiency.

I do not believe the constitutional provision limiting legislative enactments to a single subject admits of the breadth of construction urged by the IUB and the attorney general. Were the provision that loose, little imagination would be required to fit any legislation under such a big tent. The function of the single-subject requirement would be swept away by general terms and uninformative language. Nor can the crafting of a warehouse label of ill-defined scope be excused by our principle of liberal construction for a statute that violates the Iowa Constitution's single-subject requirement.

Article III, section 29 of the Iowa Constitution is violated if all provisions of the statute do not relate to the subject addressed in the title. We said in *Lee Enterprises, Inc. v. Iowa State Tax Commission*, 162 N.W.2d 730 (Iowa 1968):

> It is sufficient if all the provisions relate to the one subject indicated in the title and are parts of it or incidental to it or reasonably connected with it or in some reasonable sense auxiliary to the subject of the statute.

*Lee Enters.*, 162 N.W.2d at 737 (quoting *State v. Talerico*, 227 Iowa 1315, 1322, 290 N.W. 660, 663 (1940)).

The subject which can be gleaned from the title of Senate File 2370 is the promotion of energy efficiency and the reduction of demand for nonrenewable energy resources. The subject of section 12, however, is the elimination of competition by rate-regulated gas and electric utilities. This subject is not connected with the subject indicated by the title of Senate File 2370. The IUB and the State suggest the subject indicated by the title is the regulation of public utilities. The title, however, does not include any words regarding public utility regulation. Thus, there are no words in the title indicating so broad a subject. The State and the IUB attempt to derive the subject from the provisions of the Act. This is not the method indicated by our prior cases. Furthermore, allowing such a method to be utilized would allow the State to craft a subject in hindsight tailored to the matter being litigated. Such leeway in interpretation would eviscerate the single-subject requirement and is contrary to our prior holdings. I believe that section 12 of Senate File 2370 is void as a violation of the single-subject requirement of the Iowa Constitution article III, section 29.

### III. Title Requirement

In addition to the single-subject requirement, article III, section 29 commands that

the subject of the act be embraced in the title. While legislation is given a presumption of constitutionality, the purpose of the title requirement must not be frustrated. *State v. Nickelson,* 169 N.W.2d 832, 834, 837 (Iowa 1969). In *Western International v. Kirkpatrick,* we outlined the law on this provision as follows:

> While this legislation is given the benefit of a presumption of constitutionality, *State v. Nickelson,* 169 N.W.2d 832, 834 (Iowa 1969), we must insure the purpose of the title requirement is not frustrated. The purpose of the requirement is to guarantee that reasonable notice is given to legislators and the public of the inclusion of provisions in a proposed bill; thus it is said to prevent surprise and fraud. *Long v. Board of Supervisors,* 258 Iowa at 1284, 142 N.W.2d at 381 . . . .
>
> A title is sufficient, even though it is broad, if it gives fair notice of a provision in the body of an act. [*Chicago, Rock Island & Pac. R.R. Co. v. Streepy,* 207 Iowa 851, 856, 224 N.W. 41, 43 (1929).] The enactment is constitutionally valid as to the title unless matter utterly incongruous to the general subject of the statute is buried in the act. *Witmer v. Polk County,* 222 Iowa 1075, 1085, 270 N.W. 323, 328 (1936). In *State v. Talerico,* 227 Iowa 1315, 1322, 290 N.W. 660, 663 (1940), we stated, "[T]he title need not be an index or epitome of the act or its details. The subject of the bill need not be specifically and exactly expressed in the title." The title must, however, give fair notice of the act's subject and it must not deceive its reader. *See State v. Nickelson,* 169 N.W.2d at 834; N. Singer, *Sutherland Statutory Construction* § 18.10 (C. Sands 4th ed. 1985) (Generality of the title is not reason enough to strike the act unless the title is misleading or deceptive.). "In determining the sufficiency of a title, courts examine whether anyone reading the title of an act could reasonably assume that the reader would be apprised of all of its material provisions." 1984 Op. Iowa Att'y Gen. 173.

*Western Int'l,* 396 N.W.2d at 365.

The IUB and the attorney general argue the statute should be upheld, stating that the title does not have to be an index of the bill. *See Green v. City of Mt. Pleasant,* 256 Iowa 1184, 1199, 131 N.W.2d 5, 15 (1964) (stating that it is not necessary for the title of an act to function as an index of the details of the act). They point to the dates of March 27, 1996, when the language in section 12 was filed, and May 1, 1996, when the bill passed both houses, to show the bill was not logrolled or slipped through at the last minute. With the history of the bill and its numerous amendments as support, the IUB and the attorney general claim the legislators were not deceived or misled by the bill's title. They argue the subject matter of section 12 is not "utterly incongruous" as related to the subject of energy efficiency and energy efficiency mandates. Finally, they claim that the title requirement is merely procedural; it does not protect substantive rights of citizens versus government.

I believe that the subject matter of section 12 is clearly the prohibition of competition by regulated gas and electric companies in the area of appliance service and repair. Section 12 may be deemed to be fairly well buried in the Act. But of greater moment is that this subject matter is utterly incongruous to the general subject matter of energy efficiency found in the title of Senate File 2370. The title contains no words or statement regarding public utility regulation. Nothing in the title gives the reader fair notice that the bill includes an anti-competition section. Without fair notice, the reader is deceived by the title as to the contents of the bill. Nothing in the title remotely apprises the reader to expect the inclusion of an anti-competition provision.

Through its Service Guard program, UtiliCorp provides repair and protection for a customer's furnace, water heater, stove, clothes dryer, and other appliances. The customer pays a monthly fee for these services. UtiliCorp is able to provide these services during its downtime, when it is not doing utility work that is rate regulated. UtiliCorp is not permitted under the law prior to the passage of section 12 to pass on to its customers the costs attributed to pro-

viding nonutility services in its regulated rates or charges. Iowa Code § 476.78.

Section 12 that amends Iowa Code section 476.78 now prevents UtiliCorp and other rate-regulated gas and electric public utilities from using their vehicles, equipment, and employees to provide nonutility services to their customers. The obvious result is that section 12 eliminates these public utilities as an economic competitor for this work. Nothing in the title of Senate File 2370 suggests this legislative result.

The constitutional restriction regarding titles is not satisfied by a showing that some legislators knew of the provision or that the time between introduction of the bill and passage was reasonably long. Nor is the constitutional requirement fulfilled by showing that legislators were not misled. The true standard is objective—whether, from the title, the content of the legislation is indicated, so that a reasonable person, legislator or nonlegislator, reading the title, would anticipate that the questioned legislation is included. *See National Benefit Accident Ass'n v. Murphy,* 222 Iowa 98, 105–06, 269 N.W. 15, 19 (1936).

In applying the criteria set forth in our prior cases for determining the constitutional sufficiency of the title of legislation, I conclude that section 12 fails to pass each of the aforementioned tests. Section 12 of Senate File 2370 should be held to be void as being unconstitutional legislation by reason of violating the title requirement of article III, section 29 of the Iowa Constitution.

IV. Given my views that the single-subject requirement and the title requirement of the Iowa Constitution have been violated by section 12, Senate File 2370, additional constitutional challenges by UtiliCorp need not be addressed.

CARTER and LAVORATO, JJ., join this dissent.

TERNUS, J., joins in Division III of this dissent.